Lee S. Jones and Barbara Jones v. Commissioner.
Jones v. Commissioner
Docket No. 94310.
United States Tax Court
T.C. Memo 1964-39; 1964 Tax Ct. Memo LEXIS 295; 23 T.C.M. (CCH) 235; T.C.M. (RIA) 64039; February 24, 1964
*295 Petitioner performed numerous legal services for the testatrix over a 25-year period from 1930 until her death in 1955. However, the great bulk of these services were performed between 1930 and 1946. He submitted no bills to his client, and she, having paid him small amounts from time to time, did not consider that any debt existed. In appreciation for these services and because of their long and close association she left petitioner $10,000 by a codicil to her will made in 1952, but she did not intend this to be actual payment for services rendered: Held: since the $10,000 was not intended to be compensation, it is a bequest within the meaning of section 102 of the 1954 Code, and is therefore excluded from gross income. R. T. Baker, for the petitioners. *296 Dennis M. Feeley, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: The respondent determined deficiencies for the taxable years 1955 and 1956 of $2,170.42 and $8,268.54, respectively. The parties have stipulated that no deficiency is due for the year 1956. The only remaining issue is whether $10,000 paid to the petitioner in 1955 under the provisions of a codicil to a will is excluded from gross income as a bequest under section 102 of the 1954 Code or whether it was in payment for past services and therefore taxable income to the petitioner. The petitioners filed a joint Federal income tax return for the taxable year 1955 with the district director of internal revenue at Louisville, Kentucky. Petitioner, Lee S. Jones, is a lawyer and has been actively engaged in the practice of law in Louisville, Kentucky, continuously since January 1930. Minnie S. Pridmore was a client of Jones continually from 1930 until her death. She died March 8, 1955, at the age of 80, and Jones qualified and acted as the executor of her will and estate. Both Jones and Minnie were engaged in the purchase, sale and rental of real estate, and during her lifetime he performed legal *297 services for her in connection with at least 200 minor real estate transactions; he prepared and reviewed rental contracts, collected rents, and assisted in the purchase and sale of land. He prepared or reviewed income tax returns for Minnie and her husband, an accountant, and represented them during the audit of one income tax return in the early 1950's. He also acted as her attorney in 16 court cases in the Kentucky magistrate and circuit courts. Almost all of these matters were petty, involving small amounts and routine real property ownership problem. Jones submitted no bills to the Pridmores, and, except for about $300 during the 1930's, $30 in 1949, and $15 in 1950, he received no compensation for these legal services. However, Jones did not perform all of these services for Minnie with the expectation of payment. As mentioned above Jones too was interested in the real estate business in Louisville over the years and they shared this common activity. Although he carried no account on his books showing a balance due from Minnie at the time of her death, Jones estimated at trial that the fair value of his services to Minnie between 1930 and 1946 was $8,000 and for the 6-year *298 period from 1946 to 1952 was an additional $600. But while Minnie was appreciative of the services rendered by Jones, she would not have been willing to pay anywhere near $8,600 for them, and would have been "shocked and horrified" in Jones' view if he had ever billed her for any such amount. Minnie was extremely penurious and one of her main ambitions in life was to accumulate an estate equivalent to one-half of a million dollars. She did not place the same monetary value upon Jones' services as he later did, and felt that she had paid him over the years what these services were worth. On November 19, 1948, Minnie had executed her will naming her husband, Joseph G. Pridmore, and her heirs-at-law as the beneficiaries of her estate, and Louisville Trust Company of Louisville, Kentucky, as executor. The will provided generally also that each beneficiary under the will pay the Kentucky inheritance tax chargeable to his bequest and his pro rata share of the Federal estate tax on the value of his bequest. Jones did not prepare this will for her. On September 26, 1951, she executed a holographic codicil which reads as follows: I make this a codicil to my will, I name Lee S. Jones *299 as executor of my will and estate, All of my previous will shall remain As heretofore written, except this change of executor Minnie S. Pridmore. On May 17, 1952, Minnie executed a second holographic codicil which reads as follows: Codicil to my will, I give to Lee S. Jones the sum of Ten thousand dollars ($10,000) In full for his services to my estate, I also appoint Lee S. Jones as executor of my will. Minnie S. Pridmore. Jones did not prepare or have any part in preparing these codicils and he was not present when they were executed. Within 20 minutes after Minnie drafted her will in 1948, she and her husband visited Jones at his office to advise him what had been done. She then told Jones she would change the will and make him executor. This was done in the first codicil to her will three years later. Shortly after she executed the second codicil on May 17, 1952, she called Jones to her home and told him that she appreciated what he had done for her and her estate and that she had left him $10,000. This was the first time that she specifically promised to make a provision for Jones in her will, and as indicated above this was six years after the bulk of Jones' professional *300 services for Minnie had been performed. Minnie never mentioned that the bequest was intended by her as compensation to Jones, and as stated earlier no bills were ever rendered by him to his client for his legal services. She said that her husband, who was present, approved and that if she should survive her husband she would also devise her residence to Jones. Her husband agreed that if he should survive Minnie he would leave the residence to Jones. Jones, however, did not rely upon these promises or even upon the codicil since he was aware of Minnie's capricious nature, and he knew that the provision already made could be changed by her at any time. In fact, she subsequently considered making several changes in her will and in her testamentary plans but never did so, although shortly before her death she discussed changes with Jones. Jones did very little legal work for Minnie in the three years between the execution of the second codicil and her death in 1955. He handled two small cases and performed a few other legal services, including the review and typing of her 1953 and 1954 income tax returns, prepared in the rough by her accountant husband, a service which he valued at *301 $50. As in the former years, at no time did he bill her for any of these services and after Minnie's death no bill was presented to or claim made against her estate. In addition to the legal services performed by Jones for the Pridmores, he visited them socially over the years, called on Joseph when he was ill in the hospital for a long period of time and a warm personal friendship developed. At no time, however, was there any understanding between Jones and Minnie that he would be compensated for his services after her death by her estate nor was such an arrangement ever discussed. During the year 1955, Jones was paid $9,430 from the estate, $10,000 less attributable tax, as a bequest under the second codicil to the will of Minnie Pridmore, dated May 17, 1952. [1] In addition to this amount, Jones received a total of $15,000 as executor's commissions from the Estate of Minnie Pridmore, Deceased. These payments were also reported to and approved by the probate court. *302 The gross estate of Minnie Pridmore, as finally determined for tax purposes was $283,989.22. In the Federal estate tax return filed for the estate, deductions were claimed for executor's commissions of $15,000. No deduction was claimed for the $10,000 paid to Jones under the codicil to the will in either the Federal estate tax return or the Kentucky inheritance tax return filed for the estate. The $15,000 paid as executor's commissions was finally allowed in toto as a deduction from the estate for Federal estate tax purposes. Jones paid Federal estate tax of $440.78 and Kentucky inheritance tax of $543.55 with respect to the $10,000 he received under the second codicil to the will. (See footnote 1, supra.) He has never reported this $10,000 as income on any Federal income tax return filed by the petitioners. The respondent contends that the $10,000 which Jones received under the second codicil to the will was payment for services rendered by the petitioner, Lee S. Jones, to Minnie Pridmore, and that the determination of whether it is a bequest or taxable income depends on the intention of the parties. The cases of (C.A. 5, 1930), and *303 (C.A. 2, 1943), upon which respondent relies are not in point. They both involved bequests by will to named executors and/or trustees for, or in lieu of statutory commissions as, their compensation as such fiduciaries. In discussing the principles to be applied in determining the character of such payments, the court said in the Grant case, supra: The question whether a sum paid to an executor under a will is taxable income as compensation for his services or is nontaxable, being a gift or bequest to him, is to be determined in accordance with the rule laid down by the Supreme Court in United States v. Merriam * * * In the present case it is manifest that the $10,000 in question was not left to Lee Jones either for or in lieu of his executor's commissions which were paid and allowed in full both in the probate and tax proceedings in addition to the bequest in issue. We do not understand that respondent seriously urges on us the view that Jones was to be compensated for his services as executor by the $10,000 bequest. We have found that Minnie Pridmore did not consider that she was legally indebted to Jones. While this *304 is not determinative, it is a factor to be considered in arriving at her intent. We have also found from the entire record that she did not intend that the $10,000 bequest provided for by her second codicil be in payment for services performed by Jones during her lifetime. This is so despite any presumption which might arise from the fact that the recipient of the legacy had performed services for the testator. See (C.A. 5, 1955), affirming a Memorandum Opinion of this Court. The fact that Minnie Pridmore left Jones $10,000 in appreciation for his faithful services over many years does not alter its status as a bequest. While the Supreme Court has not formulated a precise definition of a bequest as used in the Internal Revenue Code, it did announce long ago in , that "The word 'bequest' is commonly defined as a gift of personal property by will; but it is not necessarily confined to a gratuity." In , this Court recognized that "A bequest is none the less a bequest because inspired by gratitude for past faithful services *305 * * *." Here we believe that the bequest to Jones was inspired by Minnie Pridmore's gratitude not only because of his services but because of his interest, concern, friendship and affection over the years. We hold that the $10,000 which Jones received under the will was a bequest within the meaning of section 102(a) of the 1954 Code, and is therefore excluded from gross income. Decision will be entered under Rule 50. Footnotes
1. The executor's report to the probate court shows this net payment, but the parties have stipulated that Jones paid Federal estate tax of $440.78 and Kentucky inheritance tax of $543.55 as indicated by our subsequent finding herein. The discrepancy is unexplained, but the tax payments were prompted by the will provision requiring beneficiaries to pay proportionate inheritance and estate taxes on their bequests.↩